UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PAUL C.[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:23-CV-1221-ACL |
| | ) |
| LELAND DUDEK, | ) |
| Acting Commissioner of Social Security | ) |
| Administration,[2] | ) |
| | ) |
| Defendant. | ) |

# **MEMORANDUM**

Plaintiff Paul C. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

An Administrative Law Judge ("ALJ") found that Plaintiff was not disabled because he could perform jobs existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is

---

[1] On May 1, 2023, the Committee on Court Administration and Case Management of the Judicial Conference of the United States issued a memorandum recommending that courts adopt a local practice of using only the first name and last initial of any non-government party in Social Security opinions.

[2] Leland Dudek is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be reversed and remanded.

## I. Procedural History

Plaintiff protectively applied for benefits on June 18, 2021. (Tr. 165.) He claimed he became unable to work on January 1, 2016,[3] due to back pain, hip pain, anxiety, anger problems, degenerative discs, high blood pressure, hernia, and knee pain. (Tr. 165, 190.) Plaintiff was 52 years of age at the time he filed his application. (Tr. 38.) His application was denied initially and he appealed to an ALJ. (Tr. 111-20, 122.) On November 25, 2022, after a hearing, an ALJ found that Plaintiff was not disabled. (Tr. 27-39.) The Appeals Council denied Plaintiff's claim for review. (Tr. 11.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Plaintiff argues that "the ALJ's finding that [Plaintiff]'s anxiety and shoulder impairments were non-severe is not supported by substantial evidence." (Doc. 12 at 5.)

## II. The ALJ's Determination

The ALJ first found that Plaintiff has not engaged in substantial gainful activity since his June 18, 2021 amended alleged onset of disability date. (Tr. 29.) Next, the ALJ concluded that Plaintiff had the following severe impairment: degenerative disc disease of the lumbar spine. *Id.* The ALJ found that Plaintiff did not have an impairment or combination of impairments that

---

[3]He subsequently amended his alleged onset of disability date to June 18, 2021, his protective filing date. (Tr. 27.)

Page **2** of **20**

met or medically equaled the severity of one of the listed impairments. (Tr. 30.)

As to Plaintiff's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 416.967(c)

(Tr. 31.)

The ALJ found that Plaintiff had no past relevant work, but there was work existing in significant numbers in the national economy that Plaintiff could perform. (Tr. 38.)

The ALJ's final decision reads as follows:

> Based on the application for supplemental security income protectively filed on June 18, 2021, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 39.)

### III.  Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations

omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974,

977 (8th Cir. 2003).   Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First, the Commissioner will consider a claimant's work activity.   If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."   *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).   "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do

basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks

omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms,

findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV.  Discussion

In Plaintiff's sole claim, he argues that the ALJ's finding that Plaintiff's anxiety and shoulder impairments were non-severe at step two is not supported by substantial evidence. Plaintiff contends that this error was not harmless, because the ALJ made no findings as to the impact of these impairments on Plaintiff's RFC.

### A. Anxiety

At step two, the ALJ found that Plaintiff's anxiety did not cause more than a minimal limitation in his ability to perform basic mental work activities and therefore was a non-severe impairment. (Tr. 30.)

When evaluating the severity of a claimant's mental impairments, an ALJ "rate[s] the degree of functional limitation resulting from the impairment(s)" in four broad functional areas known as the "Paragraph B" criteria. *See* § 404.1520a(b)(2). As correctly noted by the ALJ, the criteria are as follows: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). The ALJ rates the criteria using a five-point scale of none, mild, moderate, marked, and extreme. *See* 20 C.F.R. § 404.1520(c)(4). If the ALJ rates the claimant's mental impairments as "none" or "mild," then the ALJ will generally conclude that the mental impairments are non-severe, unless the evidence indicates there is more than a minimal limitation in the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520a(d)(1). This evaluation, known as the psychiatric review technique (PRT), is used when evaluating the severity of mental impairments at step two and in determining whether the impairments are listed at Step 3. *Cuthrell v. Astrue*, 702 F.3d 1114, 1116 (8th Cir. 2013).

If a claimant's impairments do not meet or equal one of the listed impairments, the ALJ must determine whether the claimant retains the RFC to perform his past relevant work. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (cleaned up). RFC is defined as the most a claimant can do despite his physical and mental limitations. *Hensley v. Colvin*, 829 F.3d 926, 931 (8th Cir. 2016). An ALJ must consider all of plaintiff's impairments (including those that are non-severe) in the RFC formulation. *Igo v. Colvin*, 839 F.3d 724, 730 (8th Cir. 2016).

Here, at step two, the ALJ found plaintiff had "no limitation" in each of the four paragraph B criteria. (Tr. 30-31.) In her analysis, the ALJ cited the following statements of Plaintiff from his Function Report: he could count change; despite his reports that he was "anti-social" and does not like being around people, he talked to others on the phone every other day and visited with others a couple times a month; he has never been fired from a job; though he alleged difficulty following written instructions, he stated his ability to follow spoken instructions depended on whether he understands the instructions; and he is able to drive and shop for his needs. *Id.* The ALJ noted that Plaintiff was able to understand and answer all questions asked during the hearing "with no signs of significant cognitive deficit." (Tr. 30.) Finally, she cited the following findings on examination: his concentration was noted to be "good" during his October 2021 consultative examination; and his mental status examinations were "routinely unremarkable" aside from "an anxious presentation." (Tr. 31.) The ALJ went on to fashion an RFC that did not contain any mental limitations. *Id.*

Plaintiff argues that the ALJ erred by relying on "cherry-picked evidence, at the expense of other evidence documenting greater limitations," in both evaluating Plaintiff's Function Report and the medical evidence. (Doc. 12 at 9) With regard to Plaintiff's Function Report, Plaintiff contends that the ALJ chose the statements cited above to support her finding of no limitation, yet ignored other statements of Plaintiff as well as his mother showing limitations. For example, Plaintiff notes he reported in his Function Report that he has difficulty understanding and completing tasks, and he did not follow spoken instructions well as he did not remember what was said. (Tr. 209.) Plaintiff's mother completed a statement in which she confirmed Plaintiff did not follow spoken instructions well; he did not leave the house often; he did not like to be around anyone, including family members; he did not go shopping because he

got nervous around people; it did not take much for him to get mad; he could not handle it if someone got "in his way"; he did not talk for long on the phone and mostly stayed at home; he did not get along well with bosses, landlords, or teachers; he got upset and lost his temper easily when he was stressed; he "got sidetracked" and could only pay attention "util he get[s] stressed." (Tr. 215-20.)

Plaintiff next argues that every medical opinion in this case found that he suffered from a severe mental impairment. The opinion evidence is summarized as follows:

Plaintiff saw Thomas J. Spencer, Psy.D., for a psychological evaluation upon the referral of the state agency on September 14, 2021. (Tr. 276.) Plaintiff reported that he had driven himself to the examination, but had taken the back road because he is "nervous being on the interstate." (Tr. 276.) He was prescribed Xanax[4]—one milligram four times a day—by his primary care provider. *Id.* Plaintiff attributed his anxiety to "issues," including a "bad childhood" and becoming a father at the age of 15. *Id.* He indicated that his daughter lost custody of her children and was headed to prison later that week. *Id.* Plaintiff complained that he feels overwhelmed "all the time" and believes he is a burden on his mother, as he lives with her in a one-bedroom duplex. *Id.* He reported that his thoughts race with worry much of the time; he is easily distracted; he is on edge and tense; he is "very moody," snapping at whomever is around; and the slightest stressor irritates him. *Id.* He indicated that Xanax "helps," and he tried not to take it more than three times a day. (Tr. 277.) Plaintiff reported experiencing panic attacks once or twice a week, during which his heart races, there is pressure on his chest, and he becomes short of breath. *Id.* He also noted a history of emotional and physical abuse by his

---

[4]Xanax is benzodiazepine indicated for the treatment of anxiety. *See* WebMD, http://www.webmd.com/drugs (last visited March 4, 2025).

Page **11** of **20**

father, and reported intrusive thoughts related to this abuse.  *Id.*   Plaintiff felt hopeless, helpless, and lacked interest and motivation, but denied thoughts of suicide.  *Id.*   He "slacks off" on his activities of daily living to the point his mother "gets on him."  *Id.*   Upon mental status examination, Dr. Spencer noted no obvious impairment in grooming or hygiene; eye contact was fair; speech was within normal limits; Plaintiff was cooperative and seemed to be a "decent" historian; his insight and judgment appeared intact; and his flow of thought was circumstantial. (Tr. 278.)   Plaintiff presented as "mildly anxious" and described his mood as worried.  *Id.*   Dr. Spencer found Plaintiff appeared to be of average intelligence.  *Id.*   He related poorly to proverbs and similarities, but demonstrated a good working knowledge of social norms; he recalled two of three objects after five minutes of distraction; there was no impairment in long-term memory; he slowly completed serial 3s without errors; he spelled "world" forward and backward and managed five digits forward and four backward, he was unable to identify the number of weeks in a year or the capital of Italy, and he was able to complete simple arithmetic. *Id.*   Dr. Spencer diagnosed Plaintiff with generalized anxiety disorder.  *Id.*   He expressed the opinion that Plaintiff demonstrates "moderate impairment" in his ability to learn, recall, and use information; consistently stay on task; and relate to and work with others on a consistent basis. *Id.*   He was able to manage his benefits without assistance.  *Id.*

Plaintiff returned to Dr. Spencer for a psychological evaluation in connection with his application for Medicaid on February 15, 2022.  (Tr. 301-04.)   On examination, Dr. Spencer noted Plaintiff's affect was mildly anxious; his flow of thought, insight, and judgment were "mostly intact;" he remembered only one out of three items after a delay; and he completed serial 3s slowly.  (Tr. 303.)   Dr. Spencer again diagnosed Plaintiff with generalized anxiety disorder. (Tr. 304.)   He expressed the opinion that Plaintiff has "a mental disability which prevents him

from engaging in employment or gainful activity for which his age, training, and experience or education will fit him."[5]  *Id.*

State agency psychologist Mark Altomari, Ph.D., completed a PRT on December 1, 2021. (Tr. 66-67.)  Dr. Altomari found that Plaintiff had moderate limitations in all of the "paragraph B" criteria, and that his anxiety was severe.  *Id.*  Similarly, state agency psychologist Barbara Markway, Ph.D., completed a PRT on March 15, 2022, in which she expressed the opinion that Plaintiff's anxiety was severe and resulted in moderate limitations in all areas.  (Tr. 76-77.)

Finally, Plaintiff's treating family physician, Jennifer O'Malley, M.D., completed a Medical Source Statement-Mental on July 8, 2022.  (Tr. 357-58.)  Dr. O'Malley listed Plaintiff's diagnosis as anxiety.  (Tr. 357.)  She found that Plaintiff is mildly limited in the area of Understanding and Memory.  *Id.*  Dr. O'Malley expressed the opinion that Plaintiff is moderately limited in his ability to perform activities with a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and workweek without interruption from psychologically based symptoms, and perform without an unreasonable number and length of rest periods; and is mildly limited in the other aspects of Sustained Concentration and Persistence.  (Tr. 358.)  In the area of Social Interactions, Dr. O'Malley found that Plaintiff was moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness; and mildly limited in his ability to interact

---

[5]The ALJ found Dr. Spencer's opinion that Plaintiff was disabled for the purpose of receiving Medicaid benefits "was not sufficient to be evaluated as a medical opinion regarding the claimant's mental functioning" in this matter and Plaintiff does not dispute this finding.  (Tr. 37.)

appropriately with the general public and ask simple questions or request assistance.  *Id.*  As to the area of Adaptation, Dr. O'Malley found that Plaintiff was markedly limited in his ability to respond appropriately to changes in the work setting and travel in unfamiliar places or use public transportation; but only mildly limited in the ability to be aware of normal hazards and take appropriate precautions and set realistic goals or make plans independently of others.  *Id.*  Dr. O'Malley further indicated that Plaintiff experiences drowsiness from his medications, would have bad days causing him to need to leave work prematurely or be absent approximately four days a month, and would be off-task due to his symptoms that would interfere with attention needed to perform even simple tasks approximately ten percent of the time.  (Tr. 357.)

Claims filed after March 27, 2017, like Plaintiff's, require the ALJ to evaluate medical opinions pursuant to 20 C.F.R. § 404.1520c.  This provision states the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources."  20 C.F.R. § 404.1520c(a).  Rather, an ALJ is to evaluate the persuasiveness of any opinion or prior administrative medical finding by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors.  20 C.F.R. § 404.1520c(c).

Here, the ALJ found the opinions of Drs. Altomari and Markway "unpersuasive," noting they "appear to be based exclusively on the claimant's subjective complaints" and are

inconsistent with the objective findings showing routinely normal mental status examinations. (Tr. 35.)

The ALJ next discussed Dr. Spencer's findings from his consultative examination and concluded that Dr. Spencer's opinion that Plaintiff had moderate limitations in all areas was "unpersuasive." (Tr. 37.)  The ALJ explained that there was "nothing persuasive [i]n the medical evidence to support the presence of a severe mental impairment and Dr. Spencer acknowledged that other than taking Xanax, the claimant has no history of formal mental health treatment." *Id.*

As to Dr. O'Malley's opinion, the ALJ found them "not entirely persuasive." (Tr. 37.) She noted that there was no support in the record for marked limitations in Plaintiff's ability to respond appropriately to changes in the work setting or travel to unfamiliar places, and cited Plaintiff's ability to drive to his consultative examination. *Id.* The ALJ also found no persuasive support for the presence of moderate limitations in his social functioning or ability to maintain concentration, persistence, or pace; and no support for the opinion that he would miss work four times a month and be off task for ten percent of the day. *Id.*

In support of her finding that Plaintiff's mental status examinations were routinely normal, the ALJ cited the following medical evidence:

- The January 2022 consultative examination of Kellee Neal, D.O., where Dr. Neal found Plaintiff was "unkempt," was alert and had good eye contact, his mood was "not appropriate and [he] was anxious and shaking," he had clear thought processes, his memory and concentration were normal, and he was oriented in all spheres.  (Tr. 283.)

- A May 2022 visit to establish care with family medicine physician Dr. O'Malley, at which Dr. O'Malley noted Plaintiff was "nervous/anxious," but his mood, behavior, thought content, and judgment were normal.  (Tr. 365-66.)  Dr. O'Malley prescribed Xanax as needed for Plaintiff's anxiety.  (Tr. 366.)

- A June 2022 follow-up visit with Dr. O'Malley to review lumbar spine MRI results, at which Plaintiff was again noted to be nervous/anxious, but his mood, affect, behavior, thought content, and judgment were all normal.  (Tr. 397.)  Dr. O'Malley noted that Plaintiff had tried and failed two months of a different medication for his anxiety and that she was re-filling his previous prescription for Xanax.

-  A July 1, 2022 pain management visit, at which Plaintiff was noted to be "alert and oriented" in all spheres.  (Tr. 392.)

The undersigned finds that the ALJ's determination at step two that Plaintiff does not have a severe mental impairment is not supported by substantial evidence.  This Court will not reverse an ALJ simply because substantial evidence supports a decision different from the one she made.  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  But here, substantial evidence does not support the ALJ's conclusion.  *Kuikka v. Berryhill*, Case No. 17-CV-374, 2018 WL 1342482, at *10 (D. Minn. March 15, 2018).  While an "ALJ is not required to explain all the evidence in the record[,]" she may not pick and choose from the evidence and rely on only that which supports her conclusion.  *Nelson v. Saul*, 413 F. Supp. 3d 886, 916 (E.D. Mo. 2019) (citing *Taylor ex rel. McKinnies v. Barnhart*, 333 F. Supp.2d 846, 856 (E.D. Mo. 2004)); *see also Fowler v. Bowen*, 866 F.2d 249, 252 (8th Cir. 1989) ("In determining whether the Secretary's decision is supported by substantial evidence on the record as a whole, the court must

Page 16 of 20

take into consideration the weight of the evidence in the record both for and against the conclusion reached.").

Here, every medical professional asked to provide an opinion found that Plaintiff's anxiety was severe, resulting in at least moderate limitations. While the record does suggest that Plaintiff at times presented with a normal mood and affect, every visit to a medical provider reflects his active diagnosis of, and treatment for, generalized anxiety disorder. And despite the "normal" notations cited by the ALJ, most of which are found in treatment notes from providers treating Plaintiff's *physical* impairments, there are still numerous references to mental abnormalities such as Plaintiff's "unkempt" and anxious appearance, and Plaintiff's shaking on one occasion. (Tr. 283, 365, 397.) Significantly, consultative examiner Dr. Spencer's opinion is based not only on Plaintiff's report of symptoms, but also Dr. Spencer's review of the medical record as well as his own examination revealing fair eye contact, circumstantial flow of thought, mildly anxious affect, worried mood, poor understanding of proverbs and similarities, ability to recall only two of three objects after five minutes, slow completion of serial 3s, and inability to recall the number of weeks in a year. (Tr. 278.) State agency psychologists Drs. Altomari and Markway in turn relied heavily on Dr. Spencer's examination findings and report when concluding Plaintiff's anxiety was severe. Drs. Spencer, Altomari, and Markway are all specialists in the area of mental health.

In concluding the record supports no mental limitations as evidenced by Plaintiff's "normal" examinations, the ALJ appears to ignore substantial portions of the medical record. *See Furstenau v. Saul*, No. 6:19-CV-03201-NKL, 2020 WL 3287947, at *3–4 (W.D. Mo. June 18, 2020) (finding error where ALJ pointed to various "normal" notations relevant to mental impairments in treatment notes that were unrepresentative of the full context of the treatment

Page **17** of **20**

notes, for example, when the same treatment notes indicated depression and anxiety separate from a "normal mood and affect" notation and when treatment notes from mental health providers contradict those from providers treating physical ailments).

In sum, Plaintiff's treating physician, examining consultative psychologist, and two state agency psychologists all found Plaintiff's anxiety resulted in moderate work-related limitations. Plaintiff was consistently prescribed medication for his anxiety and abnormalities were frequently noted on examination. The ALJ's determination that Plaintiff had no limitation in any work-related functions and that his anxiety was non-severe lacks the support of substantial evidence.

The ALJ's step two error was not harmless, as the ALJ went on to find *no* mental limitations in Plaintiff's RFC and included no mental limitations in the hypothetical posed to the vocational expert. The impact of Plaintiff's anxiety on Plaintiff's ability to work is therefore unknown. The Court "cannot determine whether the ALJ would have reached the same decision denying benefits[ ] even if [the ALJ] had followed proper procedure." *Lucus v. Saul*, 960 F.3d 1066, 1070 (8th Cir. 2020) (*quoting Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003)); *see also Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) ("To show an error is not harmless, [the claimant] must provide some indication that the ALJ would have decided differently if the error had not occurred."). Therefore, remand is appropriate.

### B. Shoulder Impairment

Plaintiff also challenges the ALJ's finding that his right shoulder impairment is non-severe. Although the Court has already found that reversal and remand is appropriate for proper evaluation of Plaintiff's anxiety, the undersigned will briefly discuss this additional claim.

At step two, the ALJ acknowledged that Plaintiff was diagnosed with "mild tendinopathy and a partial thickness articular-sided tear of the anterior supraspinatus of his right shoulder in July 2022." (Tr. 30.) She found this impairment was non-severe "since this condition is expected to resolve within twelve months and prior radiographic imaging performed in November 2021 did not indicate any bony abnormalities in the claimant's right shoulder joint." *Id.*

Plaintiff argues that the ALJ erred in finding Plaintiff's shoulder impairment did not meet the duration requirement. He contends that, by the date of the ALJ's decision, the impairment had lasted twelve months; but even if it had not yet lasted twelve months, the ALJ provided no explanation as to why she believed the impairment would resolve within twelve months. The undersigned agrees.

The plain language of the statute and regulations demonstrates that the ALJ must consider whether the impairments have already lasted for 12 months; *and*, if not, whether the impairments *could be expected to last for 12 months*. 20 C.F.R. § 404.1509; *see also* Social Security Ruling 82-52, 1982 WL 31376 ("the disabling impairment(s) ... must be expected to result in death, or must have lasted (or be expected to last) for at least 12 continuous months from the date of onset") (emphasis added).

Here, the ALJ found, without explanation, that Plaintiff's right shoulder impairment was expected to resolve within twelve months. The ALJ's reference to normal November 2021 shoulder x-rays does not support her finding, as x-rays would not be expected to reveal a soft-tissue injury such as a rotator cuff tear. The ALJ's determination that Plaintiff's right shoulder impairment was not severe because it did not meet the durational requirements is, therefore, not

supported by substantial evidence. This error was not harmless, because the ALJ did not consider this impairment when determining Plaintiff's RFC.

Thus, on remand, the ALJ should re-consider whether Plaintiff's right shoulder impairment is a severe impairment, and then determine how this impairment affects Plaintiff's RFC.

## Conclusion

For the reasons discussed above, the Commissioner's decision is not based upon substantial evidence on the record as a whole and the cause is therefore remanded to the Commissioner for further consideration in accordance with this Memorandum and Order. Upon remand, the ALJ shall consider whether Plaintiff's right shoulder impairment is severe at step two, properly evaluate the persuasiveness of the medical opinion evidence, and formulate a mental and physical RFC supported by substantial evidence.

Judgment will be entered separately in favor of Plaintiff in accordance with this Memorandum.

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of March, 2025.